This case, number 19-1331, United States v. Isis, Juan Nieves-Melendez. Attorney for the appellant can go ahead and introduce herself on the record to begin. Hey, please, the court. Good morning to all of you. Judge Calleada, I move to reserve two minutes. Yes, you may. Thank you. My name is Laura Maldonado and I represent Mr. Nieves-Melendez. From the start of the case, the complaint, Mr. Nieves-Melendez said, I don't live there. I was there because somebody else, a friend, brought me. During the hearings that were held before the district court, Mr. Nieves-Melendez again said, I don't live there. And I looked at all of the discovery and I'm not mentioned. And in the discovery, I am not mentioned in the reports that generated the search warrant. There were two sentencing hearings and he again said so. And there was a memo by his counsel where, again, his counsel said, a friend of a friend brought him in. If you look at the pre-sentence report, the pre-sentence report details where the drugs were found. And if you look at page six, paragraph 19 of the pre-sentence report, which would be page 25 of the sealed appendix, you will find that Mr. Nieves-Melendez was found in a room where there was one bullet in a nightstand drawer and a search of the closet revealed one shoebox that was under clothing that had paraphernalia, empty baggies. That's the room where Mr. Nieves-Melendez was sleeping. Excuse me, counsel, just so that I can catch up to you. You're arguing the plea withdrawal issue at this point. Okay. That is correct. So at no point, I'm sorry, at no point of all of these facts coming up in the different hearings did the government object and say, no, no, no, we do have him in the reports. No, no, no, there were drugs where he was sleeping. No, no, no, he has been part of this group all the time. So when Mr. Nieves-Melendez moves alone to withdraw his plea, because he was alone in this endeavor, his counsel was not helping him, he placed on the record enough for this court to grant the plea withdrawal. Did he raise at any point, with or without counsel, an assertion of factual innocence for withdrawing the plea? He said several times, and I cite them all within my brief of the parts of the record, that he didn't know the people, that he had been brought there because he needed a place to sleep. His counsel states in one of the motions that he was homeless, and at no point throughout, the government counters this version of the facts. And it is important to note that in the context of the plea withdrawal, the court needs to look at the Rule 11 core concerns. Was this plea knowing? Was this plea intelligent? Was this plea voluntary? A plea cannot be knowing and intelligent if your lawyer advises you that if you were there, you are guilty. If the district courts tells you, as the district court did here, if you were there, you are guilty. Because the truth of the matter is that all of these matters were discussed between Mr. Nieves-Melendez and his counsel. This was admitted by both Mr. Nieves-Melendez and his counsel for the record. Isn't the chronology here that he pled guilty with a plea agreement that had a small amount of drugs being attributed to him? And so they have had certain expectations, as many laypersons might, that that's what he's going to get sentenced for. Then he gets the PSR. The PSR is attributing all these other drugs to him. And so at that point, he wants to withdraw his plea. But when he does so, when he explained it, he said it's not correct, referring to the PSR, the amount they attributed to me. Can't that be read as saying, look, I am guilty of what I pleaded guilty for, but now I see that I'm going to get held responsible for all this other stuff, and I didn't do that. That's a little different than saying I was innocent of what I pled to. And I would agree with you, Judge, were it not for the fact that he also said, so I should be judged because for what it is, because I was there, I was at this place, I was sleeping. And let me admit something else. But that wouldn't differentiate between amounts. How do you reconcile that with his saying that he was objecting to the amount they attributed to him? Because I will admit to you that for a lay person, for a person that is in this position, it is very possible that if the PSR would have come back as he signed, we would have never heard about this, I was only there and I was sleeping, because he had been convinced by his lawyer that he was, that the best course of action was to plead guilty. So we would have never heard a complaint if he would have, if the PSR would have come back supporting the plea agreement. The only reason why we are here today and we are looking at this, at this record that is peppered with all of these claims of innocence is because the PSR came back differently. And it is absolutely possible that this man, who might be innocent and claims to have been innocent, pled guilty because his attorney told him to do so as a matter of fact, as part of the record. The judge asked him, why did you do this? And he says, well, I was following my lawyer's advice. And the court says, as you should, and went on to sentence him. You had a second argument in your brief. Were you going to address that at all today, that the record was insufficient to attribute those words? Let me first concede that I, in the digital world, made a mistake and did not include the standard of review for that. And I concede that as the government pointed out. Well, didn't he object? He did. One of those cases where not the counsel, but the defendant himself objected to the amount that was being attributed to them. Both of them. Counsel filed an objection because the court allowed it. And the government did not object to his being allowed to file a late objection. And the rules provide for, at least local rules, that the court can allow the extension of the term to file an objection. So we did reserve that. And Mr. Nieves-Melendez also objected to that. What I have to say is that the admission by Mr. Nieves-Melendez during his plea as to the quantity of drugs should not have been amended as to the other drugs, precisely for the fact that he was found sleeping in another room that did not contain drugs different than others that were found sleeping in the room that had the marijuana under the bed. But where did he get his drugs from that he pled guilty to? I think there's an argument that all the drugs were in a central place and they all had access to that. And his amount that he pled guilty to was part and parcel of that rather than a separate stash. Not all the drugs were found in the same place. There was one room that had bags of marijuana under the bed and there were the drugs that were found in the bag in the couch where another one of the defendants was sleeping. Thank you, counsel. At this time, would counsel for the government please introduce herself back on the record to begin? Good morning again, your honors. May it please the court, Julia Maconiatis for the government. Here, the district court properly denied Mr. Nieves' motion to withdraw his plea because he failed to show a fair and just reason behind his request. All of the factors that the court should take into consideration when evaluating such a motion tipped against plea withdrawal. What's patently clear from the record is the reason Mr. Nieves wanted to withdraw his plea was because the PSR came out with a steeper guideline calculation than what was originally in the party's proposed plea agreement. Would you mind if I interrupted this part of your argument just to get one point of clarification and that goes to Judge Chiara's last question to sister counsel about the amount of marijuana that was attributed to this defendant at the guilty plea stage, whether that was all accounted for from having been found in the room where he was sleeping or whether there was additional marijuana in the larger stash in the other room? To clarify, in the room where Mr. Nieves was sleeping, there were no drugs found there. There was drug paraphernalia and ammunition. The rest of the drugs were in two separate areas. There is one room where 13.8 grams of marijuana were found and the remaining marijuana was found in the brown bag that contained all of the other drugs. How much? What's the weight of that? 73. He pled guilty to all of the marijuana. So in order to get to the 87, you need to take into consideration what was in the brown bag. I apologize for the interruption. No, not at all, Your Honor. As I was getting back, the reason for Mr. Nieves wanting to withdraw his plea is patently clear from the record and it's the PSR coming up with a heightened drug quantity determination and therefore sentencing range. When you look in the PSR, during his interview with a probation officer, he accepted responsibility. It was only after the PSR was discussed that he stated that he wanted to withdraw. And at the first sentencing hearing, you can actually see Mr. Nieves' true motivation. When he addresses the court one-on-one, he doesn't ask first for plea withdrawal. He pleads for the court to respect the agreement and to give him 66 months. It's only when he sees that that's not going anywhere that he starts seeking to withdraw, giving his reasons that he is innocent. But a higher guideline calculation in a PSR is not considered a fair and just reason to withdraw your plea. As this court has held, buyer's remorse is not a reason to withdraw your plea. You can see why when someone pleads guilty to that much drugs, a layperson is going to think, and could be quite surprised if counsel hasn't braced them for the fact, that they're going to be sentenced for that much. Well, Your Honor, that consideration was, if you look at the Rule 11 colloquy, the district court advised Mr. Nieves that this is your plea agreement, that your plea agreement is not binding upon the court, that I do not have to accept this plea agreement, that a probation officer is going to author a pre-investigation report that may be different. And the fact that that is different or I may sentence you above the recommended range is not a fair reason to withdraw your plea. He could have, depending, the counsel could have sought to seek a Rule C, binding plea, but they went for a Rule B, non-binding plea agreement. And in there is the inherent risk that even if the court had accepted the drug quantity calculation, it wasn't required to use that guideline range. But the hole in the Type B Rule 11 colloquy is, to me, as Judge Kayada has alluded to, that there is no discussion about all of the relevant conduct, what the total amounts, so we rely on counsel to take care of that. Yes, Your Honor. And this court has actually held that requiring district courts to possibly go into possible guideline calculations is putting the cart before the horse, because you would need somewhat of a full-blown pre-sentence report prior to a guilty plea, and that's just not sustainable. No, I agree with all of that. I'm just seconding Judge Kayada's point that one could see where the layperson might think, this is what I'm going to be held responsible for. The judge didn't say anything differently in any kind of detail with respect to relevant conduct. The system relies on counsel to explain all of that. Is there something that I'm missing here? No, Your Honor. No, Your Honor. The court did comply with all of the Rule 11, but there is no indication from the change of plea that we don't know what counsel told his client. And obviously, direct appeal is not the forum to try to develop such a record. But when we look at the timing, which is the second inquiry, the second factor in the plea withdrawal analysis, it's highly suspect. This court has said that even 13 days can be too much of a lapse. And here we have five months, and the first mention of this is after a PSR comes up with a steeper guideline range. And as this court has also found for the last factor, the claim of innocence, as in United States v. ISM, this court held that the timing of innocence when it comes for the first time at sentencing, when you realize you're probably going to be facing a stiffer sentence that what you had previously anticipated lacks persuasiveness. So if your first claim of innocence at your sentencing hearing, five months after you pled guilty, only after your PSR comes, it puts into question whether your claim of innocence, what's really driving it. Now, let me ask you a question. The claim of innocence is only asked to the drug count, because I'm looking at the record and everything. He's not claiming factual innocence. He pled guilty also to 924C count, and he's not challenging that on appeal. Well, interestingly enough, he requested to withdraw his guilty plea. Now, all of the facts here are about the drugs, which is for the substantive. Because he's saying, the gun was not in the room either. He's saying, I was sleeping in the room, I'm factually innocent, but everything is focused, if I'm not mistaken, on the drug, because it's not the drug amount he pled guilty to. Yes, Your Honor. He's not contesting, oh, by the way, the firearm, I'm also factually innocent, because that wasn't the firearm. And he pled guilty to both counts. Yes, Your Honor. He pled guilty to both firearms and the drugs. And he just merely voiced a claim of innocence. And this court held that that's not enough, that it must be credible, that I don't live here, that I wasn't on surveillance. And again, just correct, yes or no to this, but he is never saying, oh, that gun, I never saw it, it wasn't there. His factual innocence claim, it just pertains to that extra amount of drugs, not to the firearm. Well, he said the firearm's not, I didn't live in the house, so nothing in the house can be mine. At some point, he does say that at the sentencing hearing, which would lead me to conclude that he's trying to step away from all criminal liability here. Well, he moved to withdraw his plea in total. Yes, Your Honor. And the 924C count is tied to drugs. Yes, Your Honor. So, okay. Yes. But his protestations of innocence are also inherently incredible. Criminals rarely welcome innocent people into a stash house to be present for their, to witness their serious crimes. And this court has previously held that these 11th hour proclamations of innocence are self-serving and they're unsupported. And they also fly in the face of the statements that he made under oath to the district court at the change of plea hearing. And this court in Padilla-Galarza has stated that a defendant is stuck with the representations he makes in open court under oath, where at no point did he state that this was not mine. To the contrary, he stated that I am guilty of possessing marijuana and I am guilty of possessing the firearms in furtherance of that. So, the three factors that this court needs to take into consideration in the plea withdrawal analysis, the weight of the proffered reasons, the timing, and his claim of innocence all favored against allowing the withdrawal of the plea. So, the district court did not abuse its discretion in denying his motion in proceeding to sentence him. Did these type of cases impede the ability of your office to negotiate pleas? Because they suggest, if this were the whole universe of cases that we're looking at, and I recognize it is, that might be very different. But if it were, it would suggest, why bother to negotiate with the U.S. Attorney over drug quantity? Because whatever you negotiate, you're going to get sentenced with a higher amount. Well, Your Honor, I don't believe that the only benefit of a plea agreement is a stipulation. Now, in this case, all of the defendants had the benefit of pigeon-holding the government into a sentencing recommendation. And that sentencing recommendation was based on the drug amounts that the party stipulated to. Whereas, if there was a straight plea, then everything is fair game and the government could seek a variance. So, there is still very much a benefit, even though, legally, a probation officer may come and then add more, assuming that it has the adequate connection to the drugs at the count of conviction, which, as we've previously mentioned, it is literally bound together. But there is a benefit in having a plea agreement, even in a case like this, because you have the government's recommendation, which is worth significant weight. In general terms, what's the percentage of type C plea agreements in the district here? Your Honor, I can't give you that with specificity, but they are judges that prefer them to others. But again, a rough estimate, you know, and based on my experience, maybe 10 percent of cases, maybe 15 percent, C1C, correct? Your Honor, I would have to defer to your expertise on that, maybe, as a judge that would have accepted them. But I do know that there are judges that accept them and other judges that would not accept them. Let me ask you one last question. The fact that there's a plea agreement here and defendant is bound by the plea agreement, there's no impediment that defendant, at the time of sentencing, challenge those extra amounts or require a hearing or file an affidavit, say these drugs were not reasonably foreseeable, ask for relevant conduct and have a hearing. It wasn't requested here and it's something that's requested in this district. None whatsoever. The defendant could have. And in fact, in this specific case, in the sentencing memorandum, when they were urging the court to follow the proposed plea agreement here, the defense attorney recognized that the court may, because of relevant conduct, and it cited 1B1.3, that the court may consider these amounts, but it was the plea of please do not, I have this plea agreement with the government, both parties believe that this is the appropriate disposition to this case. But nothing would have precluded the defendant for filing motions trying to convince the court otherwise, not only of an argument of equity, but out of an argument of law. And if I'm not mistaken, counsel below was a CJA panel appointed attorney. So we're not talking about an unexperienced rookie first criminal case who doesn't know what's going on, correct? Correct, Your Honor. Counsel, I'm not suggesting anything about this district. In fact, I want, this is going to be a broad question. It applies across the board. Do you ever worry that, and it has nothing to do with defense counsel below in this case, do you ever worry that the system allows for a bit of gamesmanship between counsel and their clients? Look, this is all you're pleading to, knowing full well that there is a reasonable possibility that they're going to be sentenced far beyond what they might be expecting. Do you ever worry about that? Well, Your Honor, I do believe that there is remedies if indeed that is the case. While the record right now may not be developed, a defendant, if indeed that's the case, that they are not told, that they are completely unknowing, that they may have answered the questions properly but did not receive the right legal advice, they can always bring up a 2255 and claim an effective assistance of counsel. So there is a fail-safe in that. But these, as Mr., as Judge Helpe stated- Well, it doesn't have to be a 2255. I had cases where it was raised at the time of sentencing. Counsel never informed me that. I'm the presiding district judge. I'm going to inquire into counsel. And I must say it wasn't all the time, but I did have perhaps one or two cases where counsel, yes, I made a mistake. I did not say that. And I recall the U.S. Attorney's Office said, well, we concede plea agreement should be withdrawn. Let's go back to square one. But it has to be presented squarely before the district judge or then on a 2255, not on appeal, correct? Yes, Your Honor. Appeal would not be the proper form to delve into that issue. But I do recognize Judge Howard's concern that unless a defendant's attorney does explain all of this, there's a big question mark as to what they may know at the time of the plea. Thank you. Thank you. At this time, if Attorney Maldonado would please introduce herself on the record to begin. May I please support? Laura Maldonado again on behalf of Mr. Nieves Melendez. Three points. Number one, as to the acceptance of responsibility, I refer you to page 10, paragraph 35. That would be the seal appendix page 29. Mr. Nieves Melendez stated to the probation officer, should he have not stayed at a stranger's residence, it was a wiser choice to return to his partner's home. As to the question by Judge Gilby regarding what the exchange between Mr. Nieves Melendez and the concern expressed by Judge Howard, at pages two and three of the March 20, 2019 sentencing hearing, that would be the second able to develop the communication necessary for me to prove what I said the last time, that when I signed the plea, I did so under the understanding that it would be minimum participation, not in any way to accept that I had firearms or drugs or anything like that under my jurisdiction. Finally, to answer the panel's question regarding type C pleas, Judge Bezosa is one of the district judges that does not accept type C pleas. And let me ask you one question. What you were just saying about the defendant asking for a change of attorney, and he's stating for the record, this is not what my counsel expressed to me. Isn't, would that be grounds, usually ineffective assistance, you have to file 2255, but wouldn't that be clear from the record that there is an issue of ineffective assistance on the record as we have it now? It's clear and patent there. And that should have been explored by the district court. The district court should have asked more questions when all this came up. When he asked to withdraw his plea, may I finish my idea? When he asked to withdraw his plea, when he asked to change his attorney after the first sentencing hearing was heard, the judge should have asked more questions. Is this true? Did he really tell you that he was just there? What was the conversation that you had with him about he's just being there and not knowing about the drugs or the firearms? And even if he knew about the drugs and the firearms, was that enough for him to be guilty of agreeing to possess with Is that enough? And the judge should have asked. And that would go to the prongs for withdrawal of the plea. Yes. Thank you. Thank you. That concludes argument in this case.